EMPLOYERS REINSURANCE COR-PORATION, A Kansas Corporation, Plaintiff–Appellant,

v.

Michael KARUSSOS; and Transamerica Insurance Company, Defendants–Appellees.

No. 93–35950.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 9, 1995.

Decided Sept. 13, 1995.

James M. Callahan, Callahan & Shears, Portland, OR, for plaintiff-appellant.

Timothy R. Volpert, Davis, Wright, Tremaine, Portland, OR, for defendants-appellees.

Before: BROWNING,* CANBY, and Stephen REINHARDT, Circuit Judges.

---

* Judge Tang was originally a member of this panel and heard argument in this case. He died prior to circulation of this opinion, and pursuant to General Order 3.2(g), Judge Browning was drawn as a replacement. Judge Browning was provided with a tape of the oral argument as well as the briefs and other materials received by the other members of the panel.

REINHARDT, Circuit Judge:

This appeal arises from a grant of summary judgment denying declaratory relief in a coverage dispute between two insurance companies. We vacate pursuant to *Continental Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1374 (9th Cir.1991), and *American National Fire Insurance Co. v. Hungerford*, 53 F.3d 1012, 1019 (9th Cir.1995), and remand with instructions to decline jurisdiction and dismiss.

## I.

On January 28, 1991, Michael Karussos, an Oregon insurance agent, provided written notice to both the Employers Reinsurance Corporation (ERC) and the Transamerica Insurance Company regarding claims that had been made against him by the estate of Fred McNally, Fred McNally Enterprises, Inc., and Fred McNally's RV Super Stores. In February and March of 1992, creditors of the McNally claimants filed suit against Karussos in Oregon state court. ERC defended Karussos in the state court actions, but Transamerica refused to do so, claiming that its policy no longer covered him.

On June 15, 1992, ERC filed this diversity action in federal district court naming both Transamerica and Karussos as defendants. ERC seeks a declaratory judgment that (1) Karussos knew of the McNally claims before its policy went into effect and thus ERC had no duty to defend him; (2) if ERC is responsible for defending Karussos, then so, too, is Transamerica; and (3) ERC had no duty to indemnify Karussos for any judgment against him on certain claims in the McNally litigation.

ERC moved for partial summary judgment on the question whether Transamerica had a duty to join in defending Karussos in the state court litigation. ERC argued that Transamerica's policy covered Karussos for the McNally claims despite the fact that he gave notice of them after the Transamerica policy period had expired. ERC based its contention on a provision in Karussos' Transamerica policy that provides policyholders with extended coverage for up to one year after the expiration of the policy period.

Transamerica moved for summary judgment on ERC's request for a declaratory judgment. Transamerica argued that its normal policy coverage applies only to claims accrued during the policy period. Moreover, it contended that Karussos was not entitled to its extended policy coverage because of his subsequent purchase of the ERC policy.

The district court concluded that Transamerica had no duty to defend Karussos because his purchase of the ERC policy rendered him ineligible for extended coverage under the Transamerica policy. Accordingly, the district court granted Transamerica's summary judgment motion and denied ERC's. The district court then entered a final judgment pursuant to Fed.R.Civ.P. 54(b) so that ERC could appeal the grant of summary judgment to Transamerica. All other proceedings were stayed pending the appeal. Were we to rule on the merits, whatever the outcome, the district court would be left with a number of issues of state law to resolve.

## II.

Although the parties contend that this partial appeal requires us to decide a single issue of Oregon insurance law, we conclude that it turns instead on concerns about the propriety of a district court's exercise of federal-court jurisdiction over state law questions under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) (1988 ed., Supp. V). In *Hungerford*, we reaffirmed the general rule that federal courts should:

'decline to assert jurisdiction in insurance coverage and other declaratory relief actions presenting only issues of state law during the pendency of parallel proceedings in state court' unless there are 'circumstances present to warrant an exception to that rule.'

*Hungerford*, 53 F.3d at 1019 (quoting *Robsac*, 947 F.2d at 1374). We explained that the rule serves a number of important policies such as "avoiding rendering opinions based on purely hypothetical factual scenarios, discouraging forum shopping, encouraging parties to pursue the most appropriate remedy for their grievance, preserving pre-

cious judicial resources, and promoting comity." *Hungerford,* 53 F.3d at 1019.

The traditional rule that "states ha[ve] a free hand in regulating the dealings between insurers and their policyholders," *SEC v. National Securities,* Inc., 393 U.S. 453, 459, 89 S.Ct. 564, 568, 21 L.Ed.2d 668 (1969), makes the comity concerns identified in *Hungerford* particularly weighty in insurance cases. As the Sixth Circuit has explained in declining to exercise its jurisdiction, "[t]he states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulations." *Allstate Ins. Co. v. Mercier,* 913 F.2d 273, 279 (6th Cir.1990); *see also* McCarran–Ferguson Insurance Regulation Act, 15 U.S.C. § 1012(a) ("The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.").

■ We note that the Supreme Court case that set forth the analysis that underlies our holdings in *Robsac* and *Hungerford,* involved an insurance controversy. *See Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). Moreover, both *Robsac* and *Hungerford* involved disputes about insurance coverage, as have most, if not all of the published cases in other circuits in which courts have declined to exercise their jurisdiction over requests for a declaration of state law because of a related state court proceeding. *See Wilton v. Seven Falls Co.,* 41 F.3d 934, 935 (5th Cir.1994), *aff'd* — U.S. ——, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995); *Aetna Casualty and Surety Co. v. Jefferson Trust and Saving Bank of Peoria,* 993 F.2d 1364, 1366 (8th Cir.1993); *Mitcheson v. Harris,* 955 F.2d 235, 237–241 (4th Cir.1992); *Mercier,* 913 F.2d at 275. Thus, the *Hungerford* rule is clearly applicable to insurance disputes such as the one before us.

### III.

■ The Supreme Court recently made clear that a district court's decision whether or not to exercise jurisdiction over a declara-

tory judgment action should be reviewed for an abuse of discretion. *See Wilton,* — U.S. at ——, 115 S.Ct. at 2144. *Wilton* did not set forth all of the factors that should guide a court in performing such a review. However, we believe it clear that the proper inquiry when the district court exercises its jurisdiction in cases of the type before us is whether it abused its discretion in determining that there are " 'circumstances present to warrant an exception' " to the general rule that the action belongs in state rather than federal court. *Hungerford,* 53 F.3d at 1019 (quoting *Robsac,* 947 F.2d at 1374).

Our application of the abuse of discretion standard here is complicated by the fact that the district court did not address the jurisdictional question before proceeding to decide the merits, and does not appear even to have considered it. Such an inadvertent omission, however, neither immunizes the district court's assumption of jurisdiction from appellate review nor requires us automatically to remand for consideration of the jurisdictional question.

Because the district judge in *Wilton* stayed the proceedings, the Supreme Court had no occasion to discuss the procedure to be followed when the district court exercises jurisdiction but fails to address the jurisdictional question. The Court stated only that the district court is generally entitled to exercise its discretion "in the first instance" because those facts that "bear[ ] on the usefulness of the declaratory judgment remedy" as well as the "fitness of the case for resolution" may be "peculiarly within [its] grasp." *Wilton,* — U.S. at ——, 115 S.Ct. at 2144.

■ In this case, the parties have pointed to no facts or circumstances which would make the exercise of federal court jurisdiction appropriate. They have also failed to explain how the case before us may be distinguished from the general run of insurance coverage cases in which the exercise of a district court's jurisdiction would be unwarranted. Accordingly, any further proceedings in this case would be futile and would only frustrate the interest in judicial economy we identified in *Hungerford.*[1] For that

---

1. In concluding that a remand is not warranted    here, we do not mean to imply that appellate

reason, we not only vacate the district court's decision on the merits but also hold that its exercise of its jurisdiction constituted an abuse of discretion.

## IV.

In reaching our holding, we reject three arguments advanced by the parties in support of their contention that an exception to the general rule set forth in *Hungerford* should be made in this case.

■ First, they contend that because the state court action is no longer pending, it would be wasteful to dismiss the case at this point in the litigation. That argument has no force. The purposes that underlie the *Hungerford* rule—the conservation of judicial resources, the avoidance of duplicative litigation, the avoidance of the needless resolution of state law questions in federal court— would be undermined if the termination of state court proceedings could retroactively justify the district court's unwarranted exercise of jurisdiction. The parties' approach would render most district court jurisdictional decisions essentially unreviewable, as the pending state court trial action is often concluded prior to the time that the federal appeal is resolved. In any event, we made it clear in both *Hungerford* and *Robsac* that the propriety of the district court's assumption of jurisdiction is judged as of the time of filing, not the time of appeal. *See Hungerford,* 53 F.3d at 1016; *Robsac,* 947 F.2d at 1370.

Second, the parties contend that, unlike in *Hungerford,* this case does not involve issues similar to those before the state court. Although the narrow issue presented by this partial appeal may not turn on facts common

to the state court action, some of the issues raised by the pleadings do.

A review of the complaint reveals that ERC premised its request for a declaratory judgment against Transamerica on the district court's determination that "ERC has a duty to defend Karussos in any of the above referenced lawsuits." The resolution of that question, as the face of the complaint reveals, turns on factual questions that overlap with those at issue in the underlying state court litigation. Specifically, ERC contends that it has no duty to defend Karussos because, prior to the effective date of his policy, he became aware that the McNally dispute would lead to "a claim or suit against him". The nature of Karussos' relationship with the McNally creditors, as well as the point at which that relationship turned adversarial, are questions of fact that overlap those involved in the state court proceedings. Thus, ERC's request for a declaratory judgment against Transamerica raises factual questions similar to those before the state court.[2]

■ Moreover, in asserting that a district court errs in assuming jurisdiction only when the issues in the state and federal proceedings are similar, the parties read *Hungerford* too narrowly. *Hungerford* relied on the Sixth Circuit's decision in *Mercier.* We quoted approvingly *Mercier's* conclusion that the differences in the factual issues before the federal and state courts were not dispositive because "[the insurer] could have presented the issues that it brought to federal court in a separate action to the same court that will decide the underlying tort action." *Hungerford,* 53 F.3d at 1016–17 (citing *Mercier,* 913 F.2d at 278–79). Moreover, as *Mercier* also noted, "the petitioner was not and

courts should resolve the issue in the first instance whenever the district court fails to do so. Where the record reveals facts and circumstances that could justify a district court's discretionary decision to exercise its jurisdiction, then a remand would not constitute an exercise in futility. In such cases, the appellate court should, consistent with *Wilton,* permit the district court to exercise its discretion in the first instance. *See American States Ins. Co. v. Kearns,* 15 F.3d 142, 144–45 (9th Cir.1994). We note, however, that this case was decided by the district court before *Hungerford,* and that we would anticipate that it will be rare that a case will arise in the future in which the

district court fails to consider the jurisdictional question.

**2.** We note that ERC's claim for a declaratory judgment that it had no duty to *indemnify* Karussos also raises issues that are involved in the state court litigation. With respect to this claim, ERC's complaint states that the company has no duty to indemnify Karussos on the "common law fraud claims or the claims alleging violation of Oregon's RICO statute." Plainly, such a determination could be made only after considering issues involved in the state court proceedings.

could not be a party to the state court action." *Id.* Thus, *Hungerford* applies whether or not there is a similarity of issues.

Finally, the parties attempt to portray this case as one for a money judgment rather than declaratory relief. That effort fails. ERC's request for an order granting monetary relief is dependent on the district court's first favorably resolving its claim for declaratory relief. The complaint asks the district court to rule on a request that Transamerica pay its share of defense costs only if it first declares that ERC has a duty to defend Karussos. Moreover, the request for a determination of ERC's duties regarding Karussos is purely declaratory in nature and comes wholly unencumbered by any request for a money judgment. Thus, the action over which the district court assumed jurisdiction is plainly one for a declaratory judgment.

More generally, we do not agree with ERC's contention that simply asking for a share of the defense costs to date transforms a declaratory relief action over which jurisdiction is discretionary into a case which the district court is obliged to hear. The statutory provisions regarding declaratory relief actions cannot be avoided by the addition of a request that states, in effect, "if you rule for us, order that we be reimbursed half of the costs we have incurred thus far." Nor can such a request change the result under *Hungerford*. If a party could avoid *Hungerford*'s rule by the simple expedient of including such a request in its complaint, there would be little if anything left of that rule.[3]

## V.

The Declaratory Judgment Act "place[d] a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton,* —— U.S. at ——, 115 S.Ct. at 2143. For that reason, "in the declaratory judgment context, the normal prin-

ciple that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* at ——, 115 S.Ct. at 2143. As *Hungerford* and *Robsac* establish, concerns of "practicality" and "wise judicial administration" generally counsel against the exercise of federal-court jurisdiction over claims for declaratory relief that involve only state law questions and are brought during the pendency of a related state court proceeding. Certainly that is the case with insurance coverage disputes. Because we conclude that there are no facts or circumstances present here that would justify the district court's exercising its discretion to depart from this general rule, we vacate the grant of summary judgment and remand with instructions to dismiss ERC's complaint for lack of jurisdiction.

VACATED and REMANDED

---

**3.** The parties also erroneously argue that *Hungerford* is somehow distinguishable because in this case the parties have met the requirements for establishing diversity jurisdiction. Although *Hungerford* did not expressly state the basis for its jurisdiction, it appears to have been premised on the diversity of the parties as well. Moreover,

the principal Ninth Circuit case on which *Hungerford* relies expressly stated that the parties were diverse. *See Robsac,* 947 F.2d at 1369.